# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**GARY AKINO,**

        **Plaintiff,**

**v.**                                                                                                              Case No:  6:16-cv-183-Orl-41DCI

**MILLIKEN'S REEF, INC.,**

        **Defendant.**

## REPORT AND RECOMMENDATION

This cause comes before the Court for consideration without oral argument on the following motion:

> **MOTION:**    **RENEWED JOINT MOTION TO APPROVE SETTLEMENT AND DISMISS CASE WITH PREJUDICE (Doc. 40)**
>
> **FILED:**      **January 26, 2017**
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

### I. BACKGROUND

On February 3, 2016, Plaintiff instituted this action against Defendant alleging a cause of action under the Fair Labor Standards Act (the FLSA) for minimum wage violations. Doc. 1. On December 8, 2016, the parties filed a Joint Motion for Approval of FLSA Settlement Agreement (the Original Motion), to which the parties attached the parties' settlement agreement (the Settlement Agreement). Docs. 38; 38-1.

On January 23, 2017, the undersigned denied the Original Motion because the Settlement Agreement contained a general release and non-disparagement provision. Doc. 24. The

undersigned ordered the parties to file a renewed motion addressing the undersigned's concerns regarding the general release and non-disparagement clause. *Id*.

On January 26, 2017, the parties filed a Renewed Joint Motion for Approval of FLSA Settlement Agreement (the Amended Motion), to which the parties attached the same settlement agreement (the Settlement Agreement). Docs. 40; 40-1. The Settlement Agreement still contains both the general release and non-disparagement provision, however the parties have clarified in the Amended Motion that of the $500 payable directly to Plaintiff, $400 is for wages and $100 is for the mutual, general release. Doc. 40 at 5.[1] The parties also state in the Amended Motion that they agree to strike the non-disparagement provision contained within the Settlement Agreement. *Id*.

## II.     LAW

The settlement of a claim for unpaid minimum or overtime wages under the FLSA may become enforceable by obtaining the Court's approval of the settlement agreement.[2] *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1352-53 (11th Cir. 1982). The Court, before giving its approval, must scrutinize the settlement agreement to determine whether it is a fair and reasonable resolution of a bona fide dispute of plaintiff's FLSA claims. *See id*. at 1353-55. In doing so, the Court should consider the following nonexclusive factors:

- The existence of collusion behind the settlement.
- The complexity, expense, and likely duration of the litigation.
- The state of the proceedings and the amount of discovery completed.

---

[1] The Original Motion did not describe how the settlement amount to be paid to Plaintiff would be apportioned. *See* Doc. 38.

[2] The settlement of a claim for unpaid minimum or overtime wages under the FLSA may also become enforceable by having the Secretary of Labor supervise the payment of unpaid wages. *Lynn's Food Stores*, 679 F.2d at 1353.

- The probability of plaintiff's success on the merits.
- The range of possible recovery.
- The opinions of counsel.

*See Leverso v. SouthTrust Bank of Ala., Nat'l Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994). The Court may approve the settlement if it reflects a reasonable compromise of the FLSA claims that are actually in dispute. *See Lynn's Food Stores*, 679 F.2d at 1354. There is a strong presumption in favor of settlement. *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).[3]

The Court, in addition to the foregoing factors, must also consider the reasonableness of the attorney fees to be paid pursuant to the settlement agreement "to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva v. Miller*, 307 F. App'x 349, 351-52 (11th Cir. 2009).[4] The parties may demonstrate the reasonableness of the attorney fees by either: 1) demonstrating the reasonableness of the proposed attorney fees using the lodestar method; or 2) representing that the parties agreed to plaintiff's attorney fees separately and without regard to the amount paid to settle plaintiff's FLSA claim. *See Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009).

### III. ANALYSIS

**A. Settlement Amount**

This case involved disputed issues of liability under the FLSA minimum wage provisions, which constitutes a bona fide dispute. Docs. 1; 40. In response to the Court's interrogatories,

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[4] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority. *See* 11th Cir. R. 36-2.

Plaintiff alleged that Defendant owed him the difference between the tip credit wage he received and the full applicable minimum wage, excluding liquidated damages, fees, and costs, although Plaintiff did not actually specify the amount claimed, either by way of a total number of hours or a dollar amount. Doc. 17-1 at 2. Plaintiff later filed an amended answer to the Court's interrogatories, in which Plaintiff asserted various, potential amounts owed, ranging from $2,141.00 to $8,476.99, depending on the applicable statute of limitations and how wages owed were calculated. Doc. 20-1 at 2.

In the Amended Motion, the parties represented to the Court that they agreed to a total settlement amount of $400.00 in relation to Plaintiff's claims for unpaid wages. Doc. 40 at 5. The parties represented that although Plaintiff now estimates that he was entitled to $3,080.00 if a three-year statute of limitations applies and $2,141.00 if a two-year statute of limitations applies, "Plaintiff acknowledges that it may be difficult to prove entitlement to his estimated unpaid minimum wages at trial and also understands the risk of being awarded zero compensation should he not prevail." *Id*. at 5. On the other hand, "Defendant is confident that Plaintiff will be unsuccessful in proving any violation(s) of the FLSA and its tip credit provisions and that Plaintiff is therefore entitled to zero compensation." *Id.* at 4. Even if there is an FLSA violation, the parties state that there are disputes concerning the applicable statute of limitations and the calculation of wages owed in relation to the FLSA's tip credit provisions. *Id*. at 3-4. The parties also state that Plaintiff was represented by counsel throughout the litigation and that Plaintiff and his counsel believe that the settlement is in Plaintiff's best interest and represents a reasonable compromise of the disputed issues.

Based upon the foregoing, the undersigned finds that the $400.00 is a fair and reasonable settlement amount in this case. Accordingly, it is **RECOMMENDED** that the Court find the amount of the parties' settlement to be fair and reasonable.

**B. The Terms of the Amended Settlement Agreement**

As previously discussed, on January 26, 2017, the undersigned denied the Original Motion because the Settlement Agreement contained a general release. Docs. 39. The parties now claim that of the $500.00 payable to Plaintiff, $100.00 of that amount is in consideration for the general release contained within the Settlement Agreement. Doc. 40 at 5. The Settlement Agreement itself, which has not changed, states in a somewhat ambiguous manner as follows in relation to that $500.00: "five hundred dollars ($500.00) to be allocated to Akino for the promises contained within this Agreement." Doc. 40-1 at 1-2. Of course, the promises contained within the Settlement Agreement include the general release, but there is no indication in the Settlement Agreement as to how the funds are allocated between unpaid wages and the general release, or any other term. The parties are cautioned that the explanation contained within the Amended Motion could certainly be viewed as an improper post hoc explanation of the amount paid to a Plaintiff, simply in an effort to obtain this Court's approval of the Settlement Agreement. However, given the ambiguity both in the Original Motion (Doc. 38) and the Settlement Agreement (Doc. 40-1), and because there is no other reason to doubt the parties' explanation, the Court will accept the parties' statement as to the allocation of the amounts paid to Plaintiff in relation to the general release. Taking the parties' statements at face value, the undersigned finds that the consideration given for the mutual, general release in this matter is reasonable in this particular case given, among other things, the value and nature of the claims at issue, the length and nature of Plaintiff's employment,

and the lack of any information that Plaintiff may have had regarding any other claims against Defendant.

As to the non-disparagement provision, the parties have agreed to the Court striking that provision.[5]

Accordingly, it is **RECOMMENDED** that the Court find that the terms of the Settlement Agreement do not affect the reasonableness of the settlement.

### C. Attorney Fees and Costs

Under the Settlement Agreement, Plaintiff's counsel will receive a total of $1,500.00 in attorney fees and costs. Doc. 40 at 5. In the Amended Motion, the parties represented that the attorney fees and costs were negotiated separately from Plaintiff's recovery. *Id.* The settlement is reasonable to the extent previously discussed, and the parties' foregoing representation adequately establishes that the issue of attorney fees and costs was agreed upon separately and without regard to the amount paid to Plaintiff. *See Bonetti*, 715 F. Supp. 2d at 1228. Accordingly, pursuant to *Bonetti*, it is **RECOMMENDED** that the Court find the amount of the attorney fees and costs to be fair and reasonable.

### IV. CONCLUSION

Accordingly, it is **RECOMMENDED** that:

1. The Amended Motion (Doc. 40) be **GRANTED** only to the extent the Court finds the settlement is fair and reasonable;

---

[5] The Settlement Agreement provides that, "If any provision of this Agreement or the application thereof to any party or circumstances shall be determined to be invalid or unenforceable to any extent, the remainder of this Agreement and the application of such provisions shall not be affected and shall be enforced to the greatest extent permitted by law." Doc. 40-1 at 4.

2. The following language be **STRICKEN** from the Settlement Agreement: "Non-Disparagement. No Party shall make or publish or instigate the making or publication of any statement (in verbal, written or electronic or other form) disparaging of the other Parties, their products, services, affairs or operations or their past or present directors, officers, employees, shareholders, owners or agents whether or not such disparagement constitutes libel or slander.";
3. The Court enter an order dismissing the case with prejudice; and
4. Direct the Clerk to close the case.

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on April 12, 2017.

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy